IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                          Case No. 3:12 CR 443

                          Plaintiff,               MEMORANDUM OPINION
                                                   AND ORDER

            -vs-                                   JUDGE JACK ZOUHARY

Bradford L. Huebner, et al.,

                          Defendants


**THE SPEEDY TRIAL ACT CALCULATIONS**

Pending before this Court is Defendants' Joint Motion to Dismiss (Doc. 189) based on a Speedy Trial Act violation. This Court heard oral argument on the Motion on November 26, 2013 (11/26/13 Dkt. Entry). The Speedy Trial Act, 18 U.S.C. § 3161(c), essentially requires that a defendant be brought to trial within 70 days from the date of indictment or arraignment, whichever is later, but provides that certain enumerated pretrial delays are excludable from the 70-day period. 18 U.S.C. § 3161(h)(1)–(7). If a defendant is not brought to trial within that time, as extended, the indictment *must* be dismissed. 18 U.S.C. § 3162(a)(2).

Once a defendant makes a prima facie showing that more than 70 days have passed, the government bears the burden of proving sufficient excludable time by a preponderance of the evidence. *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996). When multiple defendants are charged together, and no severance has been granted, one speedy trial clock governs. *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989) (citing *Henderson v. United States*, 476 U.S. 321, 330 (1986)); *see also United States v. Cope*, 312 F.3d 757, 776 (6th Cir. 2002). Moreover, the excludable

delay of one defendant is also excluded for co-defendants.  *Blackmon*, 874 F.2d at 380; *United States v. Culpepper*, 898 F.2d 65, 66–67 (6th Cir. 1990).

The calculation of time set forth in Defendants' Motion to Dismiss appears to be accurate; as discussed below, the parties only dispute the significance of certain findings and the absence of others. The last arraignment occurred on October 2, 2012 (10/2/12 Dkt. Entry).  At that time, the Magistrate Judge granted the parties' motion that the "case be declared complex" and extended the motion deadline to January 31, 2013 (10/2/12 Dkt. Entry).  The Magistrate Judge further found that "the interest of justice served by granting this time outweigh the interest of the public and the defendant in obtaining a speedy trial such that the time is excluded from the Speedy Trial Act pursuant to 18 USC § 3161(h)" (10/2/12 Dkt. Entry).  At Defendants' requests, the motion deadline was twice extended by this Court, the first time until April 1, 2013, and the second time until May 1, 2013 (Docs. 57–59 & 70–71).  Both times this Court failed to make an "ends-of-justice" finding necessary to toll the Speedy Trial Act clock as required by 18 U.S.C. § 3161(h)(7).  Nor did this Court make an "ends-of-justice" finding during a May 2013 hearing when all parties agreed on an August 20, 2013 plea deadline and a December 2, 2013 trial date.

### THE GOVERNMENT'S POSITION

The Government makes three arguments with regard to the Speedy Trial Act violations.

First, it argues that the October 2, 2012 ends-of-justice finding applied to all proceedings going forward.  Even assuming that is an accurate interpretation of the Magistrate Judge's finding, this Court questions the validity of such a finding.  The Government cites *United States v. Sabino*, 274 F.3d 1053 (6th Cir. 2001) in support of the proposition that a court can make an open-ended "for all time" ends-of-justice finding.  In that case, the Sixth Circuit found no Speedy Trial Act violation

2

where the district court repeatedly granted open-ended continuances to complete certain tasks because of the complexity of the charges. *Id.* at 1063. *Sabino* held that "open-ended ends-of-justice continuances for *reasonable time periods* are permissible in cases where it is not possible to preferably set specific end dates." *Id.* at 1065 (emphasis added).

Assuming open-ended, "reasonable" ends-of-justice continuances are left on the table after *Zedner v. United States*, 547 U.S. 489, 500-01 (2006) (rejecting an open-ended "waiver" of time under the Speedy Trial Act), the Government's urged conclusion in this case falls outside the scope of *Sabino*. In *Sabino*, the district court granted three continuances, complete with ends-of-justice findings. Left unspecified at each of these three stages were specific end dates for the continuances. 274 F.3d at 1063. Here, this Court entered only one ends-of-justice finding at the outset of this multi-defendant prosecution until it entered its firm trial Order on August 20, 2013 (Doc. 117). Were a court to treat such an initial ends-of-justice finding as tolling, for all time, the Speedy Trial Act clock without ever having to again revisit that ends-of-justice determination, the Act would be nearly eviscerated. In short, *Sabino* does not require a district court to enter definitive end dates for ends-of-justice continuances, but does require that such continuances be reasonable in length. A single ends-of-justice finding, tolling the Speedy Trial Act clock from arraignment until August 20, 2013, cannot be deemed reasonable. In a case such as this, the Court believes an ends-of-justice finding must relate to some reasonable period of time related to a continuance, granted for a reasonable period of time, to complete discrete tasks in a case.

Second, the Government focuses on the Magistrate Judge's determination that this case is "complex," and argues this finding eliminated the need for further ends-of-justice findings during the course of this case. However, the Speedy Trial Act does not include a separate set of rules for

3

complex cases.  Rather complexity is one of "[t]he factors, among others," which a court is to consider when determining whether to grant an ends-of-justice continuance.  18 U.S.C. § 3161(h)(7)(B).  The court is to consider whether "the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."  18 U.S.C. § 3161(h)(7)(B)(ii).  Other factors to be considered when assessing an ends-of-justice continuance include the potential for a miscarriage of justice and counsel's need for adequate preparation.  18 U.S.C. § 3161(h)(7)(B).  This Court does not believe that the original designation of the case as complex, without more, carries through until the case is resolved and allows unlimited extensions of time without any further findings under the Act.  To the contrary, the Act still governs this Court's evaluation of every requested extension that would push the trial date beyond the statutory period.

The case of *United States v. Graham*, 2008 WL 2098044 (S.D. Ohio 2008) is instructive on this point.  In that case, the court faced a motion to dismiss based on a violation of the Speedy Trial Act.  That case, like the instant case, was designated "complex," but the court never made a specific finding, orally or in writing, that the multiple continuances met the ends-of-justice requirements for tolling the speedy trial clock.  The record in *Graham*, like the record here, did not reflect a finding that each continuance was in the interest of justice, "although an argument could be made that . . . the causes of the original designation of the case as complex had continued unabated."  *Id.* at *5.  The court concluded that the Speedy Trial Act was violated.

Third, the Government contends this Court can now supplement the docket with ends-of-justice findings.  *Zedner* stated that "at the very least the Act implies that those findings must be on

4

the record by the time a district court rules on a defendant's motion to dismiss."  547 U.S. at 507. Courts, however, are skeptical of wholesale post-hoc findings.  *See United States v. Crane*, 776 F.2d 600, 606 (6th Cir. 1985) ("A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable-delay continuance before the delay occurred.").  A district court may later *supplement* the record with reasons for an ends-of-justice finding.  *See United States v. Richardson*, 681 F.3d 736, 739 (6th Cir. 2012).  However, the record must reflect that the trial judge contemporaneously balanced the ends-of-justice factors when granting the extra time.

The cases cited by the Government, including *United States v. Wasson*, 679 F.3d 938, 946–48 (7th Cir. 2012), all differ from the instant case in one significant respect: those cases had *some* contemporaneous ends-of-justice finding which was later elaborated with specific reasons.  Here, the record is silent, and any explanation now would be untethered to the required finding.

There is no doubt that all parties and this Court believed the time between February and August 2013 was necessary to prepare this complex case for trial, but, unfortunately, there was no record statement that the Section 3161(h)(7) factors were considered for an effective ends-of-justice finding.  That small omission now trumps what everyone believed was an orderly and timely procession to trial.

5

### DISMISSAL IS WITHOUT PREJUDICE

The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other.  *See* 18 U.S.C. § 3162(a)(2); *United States v. Taylor*, 487 U.S. 326, 334 (1988).  Congress did, however, provide three factors for a court to consider when making this determination.  They are (1) "the seriousness of the offense," (2) "the facts and circumstances of the case which led to the dismissal," and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2).

In *Taylor*, the Supreme Court discussed the importance of the analysis (487 U.S. at 336–37):

> Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review.  Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress.

*See also United States v. Pierce*, 17 F.3d 146, 148–49 (6th Cir. 1994) (affirming district court's dismissal of an indictment without prejudice, finding that the district court properly addressed the three factors).

### 1.     The Seriousness of the Offenses

Each Defendant has been charged with Class C felonies of conspiracy and wire fraud. Huebner and Coenen have also been charged with twenty counts of money laundering (Class C felonies); Huebner and Teadt with fifty-three counts of Structuring Transactions to Evade Reporting Requirements (Class D felonies); and Teadt with two counts of making False Statements to IRS agents (Class D felonies).

6

Between approximately August 2010 and September 2012, the Indictment charges Defendants with conspiring to execute and in fact executing a scheme to defraud others in the sale of Iraqi currency, called dinar, and in the sale of hedge fund shares.  As part of the scheme, Defendants allegedly made materially false statements to investors about the dinar and the hedge funds. According to the Indictment, as a result of the false representation of Defendants, investors lost in excess of $23 million from dinar purchases and approximately $722,000 from purchases of non-existent hedge fund shares.

The alleged conduct has serious consequences for investors.  The number and seriousness of the charges, and the amount of money involved, favor a dismissal without prejudice.

### 2.      Facts and Circumstances Leading to Dismissal

The circumstances leading to dismissal were a procedural oversight by the Government, Defendants, and this Court for not making the necessary ends-of-justice findings on the docket when granting Defendants' extension requests.  The dismissal is not caused by the Government acting in bad faith or dragging its feet bringing Defendants to trial.  Quite the contrary -- the delays in bringing this case to trial were largely caused by Defendants' requests for more time to file motions and evaluate evidence.  No one disputes this case has been moving as expediently as possible given its complex nature.  Indeed, the irony is that this Court has denied Defendants' requests to continue the December trial date and yet the Motion to Dismiss is based on not bringing Defendants to trial sooner than scheduled.  This factor also favors dismissal without prejudice.

As a general policy, courts favor resolution of cases upon their merits rather than upon procedural technicalities. *See Graham*, 2008 WL 2098044, at *7. Should Defendants be re-indicted,

this Court will accommodate Defendants' right to a just and speedy resolution by adjusting its calendar to give this case the highest priority.

### 3.    Impact of Re-Prosecution

The final factor is the impact of re-prosecution on the administration of the Speedy Trial Act and on the administration of justice.  With regard to this factor, the Sixth Circuit has stated:

> The purpose of the Speedy Trial Act is not only to protect a defendant's constitutional right to a speedy trial, but also to serve the public interest in bringing prompt criminal proceedings. Whenever the government -- for whatever reasons -- falls short of meeting the Act's requirements, the administration of justice is adversely affected. While not all violations of the Speedy Trial Act warrant a dismissal with prejudice, the purposes of the Act would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements.

*United States v. Moss*, 217 F.3d 426, 432 (6th Cir. 2000) (internal citations and quotation marks omitted).  In this analysis, the court should also consider the prejudice to the defendant caused by the delay.  *Id.*

Defendants claim no prejudice, and can hardly be said to have suffered prejudice as a result of the failure to enter ends-of-justice findings.  Delays in the prosecution of this case have been initiated by Defendants.  Indeed, less than one month ago this Court entertained and ultimately denied Defendants' request that the trial be postponed to allow defense counsel more time to prepare their case (Docs. 132, 134 & 135).  In addition, Defendants have been on pretrial release, so their liberty has not been completely restrained.  *See United States v. O'Dell*, 247 F.3d 655, 672 (6th Cir. 2001) (noting that fewer speedy trial concerns are implicated when a defendant is not detained during the delay).

This Court also considers whether the Government engaged in prosecutorial misconduct which must be deterred to ensure compliance with the Speedy Trial Act.  *United States v. Howard*, 218 F.3d

8

556, 562 (6th Cir. 2000).  As stated earlier, this Court does not find, and Defendants do not argue, that the Government acted in bad faith.  To the contrary, Defendants concede the Government has been cooperative with timely disclosures.  Deterrence of Government misconduct is simply not a consideration in this case.  Accordingly, this factor also weighs in favor of dismissal without prejudice.

After reviewing the three factors designated in 18 U.S.C. § 3162(a)(2), the court in *Graham* concluded dismissal of the indictment would be without prejudice.  2008 WL 2098044, at *8.  As discussed above, the factors in this case are even stronger for a dismissal without prejudice. Specifically, the felonies charged in this case are more numerous and more serious than in *Graham*; the problem in *Graham* was the volume of discovery produced by the government, but the problem here were the delays requested by and granted to Defendants; there was no prejudice to Defendants in the instant case, unlike the prejudice suffered by defendants in *Graham*; nor was the length of delay nearly as long here as in *Graham*.  Finally, unlike *Graham*, where the trial was delayed indefinitely, in this case, a firm trial date was established early on, with concurrence of all counsel.

## CONCLUSION

The Government offers a practical, and tempting, suggestion that this Court make the necessary and obvious findings now in order to cure any earlier defect.  But "the appellate courts are wary of post hoc justification for tolling the Speedy Trial Act."  *Graham*, 2008 WL 2098044  at *4. And an appellate reversal of any guilty verdicts would mean the time and resources of a trial will have been wasted.  On this point, should the Government decide to re-prosecute this case, this Court is prepared to set a new trial date within 70 days, given the work already undertaken by counsel and this Court.

In sum, the offenses are serious and Defendants admit that the Government is not at fault for any perceived delay in prosecuting this case.  Rather, the dismissal is based on a technical error when granting extensions requested by Defendants during the course of this case.  As should be obvious, this Court is most reluctant to grant this Motion, which only serves to delay, not speed, the trial of this case.  There has been no prejudice to Defendants, and all parties agree this case is complex.  Further, any delay was requested by Defendants.  The Indictment is being dismissed owing to the "procedural predicament" in which it now stands.  *See Graham*, 2008 WL 2098044 at *6.

Defendants, on the eve of trial, filed a Motion to Dismiss knowing a dismissal will likely result in another indictment which will restart the clock.  For what purpose?  To delay the inevitable trial? How does this make sense?  For this case, it clearly does not.  But this Court can see no way around the authorities cited above, and therefore, regretfully, must dismiss the Indictment against Defendants Huebner, Teadt, and Emmenecker without prejudice.

IT IS SO ORDERED.

                                          *s/ Jack Zouhary*
                                     JACK ZOUHARY
                                     U. S. DISTRICT JUDGE

                                     November 27, 2013